CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
SEP 17 2018
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VERNON T., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 7:17cv00096 |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) Chief United States District Judge |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation on August 20, 2018, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted and the Commissioner's final decision be affirmed. Plaintiff Vernon T. filed an objection to the report, and the Commissioner has responded.

As explained in detail below, the opinion of treating source Jill Snider, FNP, is new, material, and relates to the period on or before the date of the Administrative Law Judge's decision. Remand for consideration of this opinion is therefore warranted. Accordingly, the court will **SUSTAIN** plaintiff's objection, **REJECT** the magistrate judge's recommendation, and **REMAND** this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

# I.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir.), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

2

## II.[1]

Vernon T. raises one objection to the magistrate judge's report. He takes issue with the magistrate judge's finding that the treating source opinion from Jill Snider, FNP is new but not material and therefore does not warrant remand. On January 6, 2016, Jill Snider filled out a Physical Residual Functional Capacity Questionnaire, documenting Vernon T.'s complaints of pain and his "severely limited" range of motion of the spine, and opining that he can sit only 2 hours and stand/walk less than 2 hours in an 8-hour workday. Administrative Record, hereinafter "R." 530-36. Nurse Snider stated Vernon T. could sit for 30 minutes at a time and stand for 10-15 minutes at a time before needing to change positions or move around, that he needs to take unscheduled breaks twice an hour, and that he can only occasionally lift less than 10 pounds. R. 532-33.

This opinion evidence was not before the Administrative Law Judge (ALJ) but was submitted to the Appeals Council and incorporated into the administrative record. See 20 C.F.R. § 404.970(a)(5), (b). In deciding whether to grant review, the Appeals Council must consider additional evidence submitted by a claimant if it is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision. Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 95-96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id.

---

[1] Detailed facts about Vernon T.'s impairments and medical and procedural history can be found in the report and recommendation (ECF No. 14) and in the administrative transcript (ECF No. 7). As such, they will not be repeated here.

3

The Appeals Council stated the new information submitted by Vernon T. "is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before February 12, 2016," the date of the ALJ's decision. R. 2. The Appeals Council denied Vernon T.'s request for review, and the ALJ's decision became the final decision of the Commissioner.

The court is tasked with reviewing the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Commissioner's findings. Wilkins, 953 F.2d at 96. Here, the magistrate judge found that the residual capacity questionnaire from Nurse Jill Snider is new and relates back to the relevant period, but he determined it is not material because there is no reasonable possibility that it would have altered the ALJ's decision. Report & Recommendation, ECF No. 14, at 16. The magistrate judge reasoned that Nurse Snider is not an acceptable medical source under the regulations and that she imposes restrictions that are inconsistent with the objective medical evidence of record. Id. Thus, the magistrate judge found this evidence does not warrant remand and recommended the Commissioner's decision be affirmed.

The court has given this issue careful consideration. Having reviewed the record in its entirety, the court cannot agree with the magistrate judge's finding.

**A.**

Vernon T. worked for twenty years as an institutional investigator/corrections officer, and for nearly that long as a part-time sheriff's deputy. R. 53-54, 69-70, 250. He had two major back surgeries, a cervical fusion in 2001 and a lumbar fusion in 2009, and returned to work after both surgeries.

4

In early 2013, he began to experience back and neck pain that was not connected to any specific injury. R. 380. Specifically, he complained of lumbar pain radiating into his left buttock and left leg that increased with activity. R. 378. He saw his primary care physician, Dr. Reynolds, three times in three weeks in March 2013. A round of prednisone provided some relief, and Vernon T. tried to return to work, but he reported to Dr. Reynolds on March 11, 2013 that his pain worsened as the day progressed and he had to leave early due to intense pain. R. 379.

Vernon T. presented to his neurosurgeon, Dr. Burt, on March 27, 2013. Office notes indicate Vernon T. had done well over the past several years following his surgeries but he now complained of increased back pain and radiating left leg pain over the past few weeks. R. 326. Dr. Burt recommended an interlaminar epidural injection, R. 324, which did not provide plaintiff much relief, R. 323. Dr. Burt then ordered myelogram/post myelogram CT images, which showed evidence of his previous fusion surgeries without complicating features, as well as evidence of spondylitic changes throughout the cervical and lumbar spine, but no areas of herniated nucleus pulposus or significant foraminal stenosis. R. 316, 319-22. In April, Vernon T. continued to complain of increased low back and lower thoracic pain with activity, such that he was unable to function. He also complained of left lower extremity numbness. On examination, he was diffusely tender to palpation in the posterior cervical and lumbar regions, but he had full range of motion and strength of the upper and lower extremities. R. 316. Dr. Burt recommended a lumbar support device and physical therapy, which plaintiff completed. Physical therapy records indicate Vernon T. was motivated and performed exercises with difficulty due to pain. Some improvement in

5

flexibility and mobility was noted, but plaintiff reported only slight, short-term relief after therapy, and he continued to complain of pain with routine activities of daily living. See R. 327-73.

In May 2013, Vernon T. took early retirement from his job as an institutional investigator/corrections officer. R. 250. He testified that, at that time, he was five years away from retiring with full benefits, which had been his plan, but he was unable to perform his job given his back pain. R. 65.

In June 2013, Vernon T. told Dr. Burt that physical therapy was of no benefit, and he again complained of left lower thoracic and lumbar spine pain radiating posteriorly down his left leg. R. 314. Upon examination, his deep tendon reflexes were hypoactive in the upper and lower extremity bilaterally, straight leg raising was negative causing only increased back pain, and he was diffusely tender in the lower thoracic and lumbar left paraspinous muscles. Range of motion was limited in all directions secondary to discomfort, but he had full strength in the lower extremities. R. 314. Dr. Burt referred him for pain management.

Vernon T. began treating with Dr. Sutton of MSMG Pain Management. He complained of pain any time he moves from a seated to a standing position, walks up stairs, or is on his feet for long. R. 387. Examination revealed strongly positive Faber's test, negative straight leg raise, and slightly reduced strength with knee extension on the left, as well as decreased plantar flexion. R. 387-88, 420. Dr. Sutton noted he believed plaintiff's problem to be in the sacroiliac (SI) joint, which made sense given his prior fusions. R. 388. Dr. Sutton stated:

> He continues to use a very small dose of opiate and at the time,
> I think this is very reasonable with all the surgery that he has

> had. I really believe that he is having some degree of pain, but will certainly try from our standpoint, to use interventional modalities. Way down the road there certainly [is] the idea of spinal cord stimulation.

R. 388.

Over the course of the next several months, Dr. Sutton treated Vernon T. with SI joint blocks, and he recommended stretching. R. 430, 432, 435. After an injection in October, plaintiff reported his joint pain was 50% or more improved. R. 435. Treatment notes from November state Vernon T. was doing well after a series of three SI injections and his pain "is basically non-existent now." R. 442. At that appointment, he complained of sternoclavicular joint pain. Plaintiff indicated he was financially strapped and declined any further injections or imaging. Dr. Sutton noted he would give Vernon T. some Lortab, which was to be used only as needed so as to not develop a tolerance. R. 443. Dr. Sutton felt it was reasonable to tide plaintiff over until he could afford more investigation and injections, despite the fact that Dr. Reynolds was hesitant to continue plaintiff on opiate therapy due to lack of evidence. Id.

Notes from Stephanie Brunham, FNP, in late November, 2013, indicate plaintiff again complained of radiating low back pain that prevented him from performing his usual functions. Examination revealed positive straight leg raise on left, weakness on the left side, and a very tender lower back. R. 454-55. Nurse Brunham noted that Vernon T. cannot perform the type of work he had performed in the past. R. 455.

There are relatively few treatment notes from 2014 involving plaintiff's back, which may be attributable to the lack of financial resources referenced towards the end of 2013. Vernon T. presented to orthopedist Dr. Morin in March 2014, complaining of discomfort in

7

his sternoclavicular joint, which resolved with a Medrol dose pack. R. 468. Records from primary care physician Dr. Reynolds indicate plaintiff could no longer see Dr. Sutton for pain management due to a change in insurance. R. 471, 472. He was encouraged to contact a new pain clinic. In October 2014, he again complained of chronic back pain, stating day-to-day activities of daily living worsen his pain. R. 472. Dr. Reynolds continued him on gabapentin and a narcotic, which was to be used sparingly. R. 474. In December 2014, Vernon T. presented to nurse practitioner Jill Snider at Forest Family Care to establish a patient relationship. He complained of chronic pain. Straight leg test was positive on the left for lumbar pain and radiculopathy. His motor strength and gait were normal. R. 484. Nurse Snider switched plaintiff from gabapentin to Lyrica and told him to follow up in four weeks. R. 485.

In January 2015, plaintiff complained of lumbar pain that radiates into his buttocks and left leg. He stated medications, including Lyrica, "helped a lot" with the pain. R. 482. Examination revealed his was tender to palpation in various areas of his back, including the lumbar spine. His straight leg test was positive at 30 degrees for lumbar pain and left sided radiculopathy into the left buttock, but he had full motor strength in upper and lower extremities. Id. Nurse Snider refilled both the hydrocodone and Lyrica, referred him to pain management, and told him to follow up in another four weeks. R. 483.

Vernon T. began treating with Dr. Yee at the Pain Management Center on February 11, 2015. Plaintiff complained of low back and neck pain extending into his left lower extremity, which worsens with "essentially any activity including sitting, standing, walking, lifting and lying." R. 512. He stated his pain decreased with rest, position changes and

medication. Id. Dr. Yee observed spasm and tenderness in the paraspinal musculature in the cervical, thoracic and lumbar regions, tenderness in the trapezius bilaterally, and tenderness in the subacromial region of the shoulder joints on both sides. Vernon T.'s lower extremity muscle strength was 4 out of 5 and range of motion was fairly normal. He had an antalgic lean to his gait and had difficulty coming up on heels and toes. R. 514. A March 13, 2015 MRI revealed degenerative disc disease at all levels except for L3-4. R. 519, 522. Dr. Yee scheduled plaintiff for three left-sided L4 and L5 transforaminal epidural steroid injections. R. 520. They provided little relief. In June, Vernon T. complained of moderate to severe daily pain with minimal improvement following the injections and some improvement with pain medication. R. 516-17. Dr. Yee remarked:

> At this time, [plaintiff] has had multiple spine surgeries, including laminectomy, fusion; has trialed multiple medications, opioid and nonopioid; as well as physical therapy and TENS unit. He has had injections recently, with no significant long-term improvement. At this point the patient will be considered for spinal cord stimulation . . . .

R. 517.

In June 2015, Vernon T. also presented to Dr. Shawver at Forest Family Care, complaining of worsening lower back pain, this time on the right. R. 496-97. At a follow up with Nurse Snider in July, he reported pain relief with Flexeril. Examination revealed pain on palpation of lumbar and cervical spine, positive straight leg raising bilaterally at 30 degrees, and moderately limited range of motion at the cervical spine. R. 492. He began seeing a chiropractor in August. R. 498-510. Later, in November, Vernon T. reported to Nurse Snider that his low back pain is exacerbated by activities such as lifting, bending and sitting.

He was tender to palpation and straight leg raise was positive for pain but not radiculopathy. R. 16-17.

In January of 2016, Vernon T. reported difficulty driving without stopping to get out and walk around. He continued to state activity increases his pain, that he can mow the lawn for 30 minutes or do housework for 15-20 minutes but then has to stop and sit down. He sleeps only 2 to 3 hours at a time due to pain. He naps during the day. Any activity requiring overhead reaching of his hands, standing more than 15 minutes, or bending over causes pain. R. 14. Nurse Snider noted his cervical and lumbar range of motion was severely limited in all directions. Straight leg raise was positive bilaterally for pain and positive on the left for radiculopathy. R. 14. He was referred for a functional capacity evaluation and to physical therapy. R. 15. After this appointment, Nurse Snider filled out a residual functional capacity questionnaire, indicting Vernon T. can sit only 30 minutes and stand 10-15 minutes at a time, and that he can stand/walk less than 2 hours and sit about 2 hours in an 8-hour workday. R. 532-33. She stated he needed a job that allowed him to shift positions at will, that he would need breaks twice an hour for 5-20 minutes each, and that he would miss more than 4 days per month. R. 533-34. Office notes from March 2016 state plaintiff reported his pain is not well controlled. He asked to switch back from Lyrica to gabapentin due to cost concerns and also stated his insurance was not accepted by the pain management clinic. R. 10-11.

**B.**

At the December 2015 administrative hearing, Vernon T.'s attorney stated "this is a grids case." R. 51. There is no dispute that if plaintiff was limited to sedentary work, the

medical vocational guidelines, or "grids," would direct a finding of disability.[2] However, this case is more aptly described as a pain case.

The record is replete with Vernon T.'s complaints of lumbar and cervical pain that worsens with activity. To be sure, plaintiff can do some yard work and household tasks, but he reported he can perform these activities for no more than 30 minutes at a time before needing to rest. Time after time, he told his treatment providers that activity increases his pain. His testimony at the administrative hearing is consistent with these reports. Moreover, he indicates he has difficulty sleeping more than three hours at a time due to pain. A 2015 treatment note states he has difficulty driving without stopping to get out. And at the December 2015 administrative hearing, Vernon T. testified he recently had to stop going to church because he was in pain sitting for two hours through church and Sunday school. R. 64. Vernon T.'s reports of radiating back pain that worsens with activity remained fairly constant from 2013 through 2016.

The ALJ found the evidence of record did not corroborate the degree of severity of limitation Vernon T. alleges. "Instead, the objective medical evidence, the opinions already discussed above, and the claimant's actual range of daily activities demonstrates that [h]e has the residual functional capacity to perform a light level of work." R. 45. The ALJ explained that plaintiff's treatment had been overall relatively limited and conservative: "Other than epidural steroid injections, the claimant has been treated primarily with medications and physical therapy, which appear to have been relatively effective." R. 44.

---

[2] The ALJ found plaintiff could perform light work.

11

To be sure, the diagnostic findings are minimal, and objective findings consistently reflect full strength in the lower extremities. Examinations were not entirely benign, however. Vernon T.'s providers repeatedly noted tenderness upon palpation and positive straight leg raises, which corroborate his complaints of pain. At times, examinations revealed limited range of motion and antalgic gait. He did have two prior fusion surgeries, and the more recent MRI shows degenerative disc disease at almost all levels. As Dr. Yee stated, Vernon T. has tried nearly every available treatment option in an attempt to alleviate his pain—narcotics and other non-opiates, physical therapy, epidural injections, a TENS unit, a lumbar support device, chiropractic treatment. While the record reflects that medication and epidural injections have helped control his pain at times, none of these many treatment modalities eliminated his pain long-term. The record makes clear surgery is not an option for the pain he has been experiencing since 2013.

In his decision, the ALJ makes reference to Vernon T.'s function report and his ability to watch television, use a computer, hunt, walk in the mountains, ride a bicycle, play softball, grocery shop, drive and ride in a car, as well as prepare simple meals, mow the lawn and perform household chores. R. 39, 44, 213-20. The ALJ's mischaracterizes Vernon T.'s description of his level of functioning, however. On this function report, plaintiff indeed listed hunting, walking in the mountains, riding a bicycle, playing softball, watching TV and the computer as his hobbies and interests. But on the very next line, he states: "Had to quit all except watching TV and using computer," and on the following line: "Unable to do the hunting, walking in mountains, riding bicycle and softball due to pain in neck and low back

which runs down left leg, also pain in the knot in the middle of my back." R. 217. As to his daily activities, he explained:

> I am able to do light house cleaning. I do this until my back and leg starts hurting. I stop and wait until the pain is gone and then continue. I use the computer for short periods then my neck starts hurting and forearms burn so I stop and continue later. . .

R. 220.

The ALJ also discounted plaintiff's credibility based on his statement that he has never had any relief from treatments, noting Dr. Sutton indicated he had excellent results from the sacroiliac joint injections. R. 44. Those "excellent results" were short-lived, however. Vernon T. continued to complain of the same type of pain for the next three years. There is no evidence in the record to suggest he is malingering. The ALJ acknowledged that plaintiff cannot return to his past work at a medium to heavy exertion level but found "a light residual functional capacity is still appropriate in this case." R. 45.[3]

The only opinion evidence the ALJ had to rely on in formulating this residual functional capacity assessment is from the reviewing state agency physicians dated November 2013 and July 2014.[4] The ALJ did not have before him any opinion from a treating provider. Nurse Jill Snider, while not an acceptable medical source under the regulations, is still a medical source, and a treating one. See Social Security Ruling 06-03p.

---

[3] The ALJ found Vernon T. has the capacity to perform light work except that he cannot climb ladders, ropes, or scaffolds; can occasionally push/pull and reach overhead with the upper extremities; can occasionally climb, stoop, kneel, crouch, and crawl; and can perform simple, routine tasks, which do not require more than occasional exposure to other hazards and allow for regularly scheduled breaks. R. 40.

[4] The ALJ references the notations in the physical therapy records that plaintiff is "unable to work," finding ambiguity as to whether these notations are based on the plaintiff's subjective reports or actual medical opinions. It appears to the court that these references to plaintiff's work status as "unable to work" are simply based on Vernon T.'s own reports, given the way the notations appear in the records under the "SUBJECTIVE" heading with no further explanation, as well as the fact that there are other references in the records to plaintiff being "currently off work due to his symptoms." See, e.g., R. 329.

Nurse Snider's residual functional capacity questionnaire was filled out more than a year after she began treating Vernon T. Her opinion on the questionnaire is well explained and references plaintiff's diagnosis of intervertebral disc degeneration of the lumbar and cervical spine, complaints of pain, severely limited range of motion of both cervical and lumbar spine, prior fusion surgeries, and the fact that his narcotic and non-narcotic pain medications cause drowsiness. R. 531-35.

The court agrees with the magistrate judge that this evidence from Jill Snider, FNP, is new and relates to the period on or before the ALJ's decision—indeed, it is dated before the ALJ issued his decision in February 2016. The court cannot agree, however, that it is not material. The court finds there is a reasonable possibility this evidence would have changed the outcome, given it is an opinion from a treating source.

Having reviewed the record in its entirety, including this new evidence, and having considered Vernon T.'s consistent complaints over three years of cervical and low back pain that worsens with activity, as well as the number of treatment options he has exhausted in an attempt to alleviate his pain, the court cannot find that substantial evidence supports the ALJ's decision in this case. Remand is therefore appropriate.

### III.

As such, the court will **REJECT** the magistrate judge's recommendation and **REMAND** this case pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

An appropriate Order will be entered.

Entered: 09/17/2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge